**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 25-6132**

───────────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JONATHAN GIANNONE,

Defendant – Appellant.

───────────────

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Cameron McGowan Currie, Senior District Judge.  (3:06-cr-01011-CMC-1)

───────────────

Argued:  May 5, 2026                                    Decided:  July 9, 2026

───────────────

Before NIEMEYER, GREGORY, and AGEE, Circuit Judges.

───────────────

Affirmed by published opinion.  Judge Gregory wrote the opinion, in which Judge Niemeyer and Judge Agee joined.

───────────────

**ARGUED:**  Joshua Snow Kendrick, KENDRICK & LEONARD, P.C., Greenville, South Carolina, for Appellant.  Andrea Gwen Hoffman, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee. **ON BRIEF:** Bryan P. Stirling, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

───────────────

GREGORY, Circuit Judge:

Jonathan Giannone was convicted of three counts of wire fraud and two counts of aggravated identity theft. Both during and after serving his sentence, Giannone sent FOIA requests to several government agencies in an attempt to establish his innocence. Eight years after the documents he requested were produced, he filed this writ for coram nobis. The district court denied the writ. He appeals this denial, urging us to vacate his conviction.

For the foregoing reasons, Giannone's case does not warrant the extraordinary remedy of coram nobis relief, so we affirm the district court's denial of his writ.

I.

The United States Secret Service encountered Giannone while investigating an online community engaging in trafficking personal information. The Secret Service had been investigating a man named Brett Johnson, who was arrested due to his involvement in this community. Following his arrest, Johnson agreed to act as a confidential informant for the Secret Service and assist with their investigation. He chatted with an individual named Pit Boss 2600 (used interchangeably with the username CIA INTEL). Pit Boss 2600 offered to sell Johnson debit card information in exchange for $600. Johnson agreed. Pit Boss 2600 then sent Johnson twenty-one debit card numbers and requested that the $600 be deposited in his Bank of America account. After undercover agents deposited the money in Pit Boss 2600's bank account, Giannone withdrew $500. The Secret Service identified Giannone as the owner of the bank account and arrested him for wire fraud.

2

Giannone was indicted in September 2006 on three counts of wire fraud and two counts of aggravated identity theft. J.A. 35.

At trial, the Government's case hinged on proving that Pit Boss 2600/CIA INTEL was Giannone. To do this, among other methods, it matched Giannone's statements in chats with Giannone's travel activities. For example, on November 8, 2005, CIA INTEL stated that he was flying to Hawaii "tomorrow" and staying at the Hyatt, J.A. 232. And the Government introduced travel and credit card statements demonstrating that Giannone booked a flight from JFK Airport to Honolulu leaving November 9, 2005 and made a payment on November 13, 2005 to Hyatt Hotels Waikiki, Honolulu, Hawaii. The Government proceeded to connect several more instances of travel discussed by Pit Boss 2600/CIA INTEL over chat with activities reflected in Giannone's travel and credit card statements. Giannone communicated using two internet chat clients: AOL Instant Messenger, under the names Pit Boss 2600 and CIA INTEL, and ICQ, under the name gollumfun.

While cross-examining the Government's witness, Special Agent Bobby Kirby, Giannone's attorney asked whether there was any way to identify where a particular chat geographically originated from, and Kirby responded that the "only identifying information is the name or ICQ number, or ICQ name, associated with that person." J.A. 247. That is, the only way to determine who is chatting is their identifying screen name or number.

In March 2007, a jury convicted Giannone of three counts of wire fraud and two counts of aggravated identity theft. The district court sentenced Giannone to 65 months in

3

prison:  41 months for the wire fraud counts, followed by 24 months for the aggravated identity theft counts.  He was resentenced in March 2010 to 57 months.

In 2008, while incarcerated, Giannone filed a FOIA request with the Secret Service. Giannone was released from custody in April 2011.  The Secret Service stated that it released any responsive records in November 2012.  In 2014, Giannone filed a separate FOIA request with the Executive Office of the United States Attorneys.  In October 2015, they responded and produced 1,000 pages of records.  Giannone stated that he received the requisite documents in February 2016.  After three years, he filed a complaint with the Office of Professional Responsibility (OPR).  And three years after OPR stated that they would not be acting on his complaint, he retained an attorney.

In August 2024, Giannone filed a writ of coram nobis forming the basis for this appeal.  Giannone argued that the Government withheld evidence from his trial, and that the evidence would have changed the outcome in his case.  The Government responded that the petition was untimely:  it was filed over eight years after Giannone states he received the relevant documents.  S.A. 8.  The Government argued in the alternative that Giannone's errors were not "of the most fundamental character," so his petition should be denied on that basis as well.  S.A. 9.

The district court agreed and dismissed Giannone's petition as untimely.  The court noted that nearly seven years had elapsed between Giannone's receipt of relevant records and when he retained counsel at the end of 2022.  J.A. 463.  The court also noted that Giannone's case did not present a "persuasive claim of actual innocence," where we have recognized timeliness poses a lesser bar to relief.  J.A. 463.  But the court nonetheless

4

discussed the merits of Giannone's case and determined that he did not demonstrate an egregious error warranting coram nobis relief.  Giannone appealed.

## II.

We retain jurisdiction over a final decision of the district court pursuant to 28 U.S.C. § 1291.

"[W]e review the district court's factual findings for clear error, its rulings on questions of law de novo, and its ultimate decision to deny the coram nobis writ for abuse of discretion." *United States v. Lesane*, 40 F.4th 191, 196 (4th Cir. 2022).

To assess whether the district court properly denied a writ of coram nobis, we generally apply a four-prong test:  (1) a more usual remedy must be unavailable; (2) the petitioner must have valid reasons for not pursuing the attack on his conviction earlier; (3) adverse consequences must stem from the challenged conviction; and (4) the error must be "of the most fundamental character." *Id.* at 195–96.

Neither party disputes that Giannone has met the first and third prongs: that the more usual remedy of a habeas petition is unavailable because Giannone has been released from prison, and that Giannone continues to be impacted by the harms of his criminal conviction.[*]  The question is whether Giannone had legitimate reasons for failing to pursue his attack earlier, and, if he did, whether the error rises to a fundamental error.  Giannone failed to meet his burden on both counts, so we deny his petition.

---

[*] While in custody, Giannone also moved to vacate his conviction and sentence under 28 U.S.C. § 2255, arguing ineffective assistance of counsel.

5

A.

We reject Giannone's petition because he failed to meet the second prong. Whether there is a valid reason for pursuing a coram nobis attack earlier is "essentially" a question of "timeliness," since there is no statute of limitations applicable to a writ of coram nobis. *Id.* at 200. As a result, the petitioner bears the burden of demonstrating that he timely pursued his attack. *Id.* at 200–01.

In other cases, we have determined a petitioner had valid reasons for any delay in challenging an underlying conviction when the petitioner filed suit almost immediately after they learned of the facts forming the basis for their petition. In *United States v. Akinsade*, 686 F.3d 248, 250 (4th Cir. 2012), for example, the petitioner pleaded guilty to an offense based on the advice of his counsel. *Id.* Nine years later, immigration authorities arrested Akinsade and charged him with removability because of the conviction, which his prior attorney had told him was not a deportable defense. *Id.* at 251. The attorney's advice was incorrect. *Id.* So, nine years after pleading guilty, Akinsade filed a writ of coram nobis challenging his conviction, and we recognized that he had demonstrated a valid reason for his "delayed" filing: he had "no reason" to challenge his conviction prior to being charged removable because his attorney's advice had seemed correct until then. *Id.* at 252. Thus, we granted the petition and vacated his conviction. *Id.* at 256.

*Lesane*, 40 F.4th at 200, is likewise distinguishable. In *Lesane*, the defendant was "actually innocent" under an "undisputed" application of intervening precedent, so he sought to have his conviction vacated. *Id.* He filed a writ of coram nobis to vacate his conviction soon after. *Id.* at 195. Because "extensive relitigation [was] not required" and "the judicial

6

resources to be expended [were] minimal," we granted the writ and awarded him relief. *Id.* at 198. And we excused his delay in pursuing this relief because he had not had a reason to challenge his faulty conviction until it was used to enhance his sentence in new criminal proceedings.

Giannone has not made such a showing. For one, Giannone argues that he did not receive the requisite documents until February 2016, and that it took him time to sort through the evidence, retain counsel, and file his writ. While we recognize the effort required to sort through pages of governmental documents, such a burden does not justify the eight-year delay between receipt of the necessary documents and initiating this suit. *See, e.g.*, *Colon v. United States*, 708 F. App'x 125, 125–26 (4th Cir. 2018) (denying *coram nobis* relief after three-year delay because petitioner was not sure whether immigration authorities would initiate removal proceedings against her). We affirm the district court's decision on this basis.

## B.

Even if we could excuse the relevant delays, Giannone has not identified errors at trial that rise to that of the "most fundamental character." *Akinsade*, 686 F.3d at 252 (citation modified). Coram nobis relief "is a 'remedy of last resort' and 'is narrowly limited to extraordinary cases presenting circumstances compelling its use to achieve justice.'" *United States v. Sutherland*, 103 F.4th 200, 210 (4th Cir. 2024) (citing *Akinsade*, 686 F.3d at 252).

Giannone points to four pieces of evidence he argues were not presented by the Government at trial. The district court considered each piece of evidence in isolation to

7

determine if it was material and favorable to Giannone, and it concluded that the evidence did not justify granting his petition for a writ of coram nobis.

Giannone contends that the errors he discovered constitute a violation of his rights under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). He argues that the Government suppressed evidence that was (1) favorable to Giannone either because it is exculpatory or impeaching; and (2) material to his defense. *See United States v. Wilson*, 624 F.3d 640, 661 (4th Cir. 2010). Impeachment evidence is evidence favorable to the defense. *See United States v. Parker*, 790 F.3d 550, 558 (4th Cir. 2015). Courts must weigh the cumulative impact of withheld evidence in cases involving *Brady* violations. *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (considering materiality of suppressed evidence collectively); *Bowman v. Stirling*, 45 F.4th 740, 752 (4th Cir. 2022) (same). So, the district court's failure to cumulatively consider the evidence Giannone points to was error.

To determine the cumulative materiality of withheld evidence, we add the suppressed evidence "to the weight of the evidence on the defense side" and "subtract from the weight of the evidence on the prosecution's side" the impact of the suppressed impeachment evidence. *Juniper v. Davis*, 74 F.4th 196, 210 (4th Cir. 2023) (citation modified). "[O]nce the evidence on the scales is adjusted to take into account the combined force and effect of the undisclosed evidence favorable to the defense," we ask "whether what is left on both sides of the scale creates a reasonable probability that a jury would acquit, and a reasonable probability is one sufficient to undermine our confidence in the guilty verdict." *Id.* at 210–11 (citation modified).

Giannone points to four pieces of evidence he believes demonstrate his innocence. Because the materiality of each piece of evidence is unconvincing on its own, we will

8

address the cumulative materiality of all the identified evidence on Giannone's conviction. At bottom, the errors Giannone identifies constitute evidentiary rulings that fail to justify use of this extraordinary remedy to vacate his conviction.

First, Giannone argues that the Government possessed undisclosed trap and trace records, so it was able to trace IP addresses to certain locations. *See* J.A. 392. Giannone claims that the case agent at trial misrepresented that there was no way to determine the location of the parties messaging. J.A. 247–48. Because the Government did not disclose this evidence, Giannone was unable to impeach Agent Kirby and/or present testimony regarding the location from which the messages originated.

The Government responds that Giannone misunderstands the relevance of the trap and trace records because they show the locations of the individuals messaging Giannone—not Giannone's location. J.A. 465. Thus, while Giannone believes this information should have been disclosed to him, the Government contends that the information is immaterial. The district court determined that the record evidence did not indicate whether the signals relayed in the trap and trace records produced were incoming or outgoing and therefore does not clearly support Giannone's theory. J.A. 466.

Second, Giannone argues the Government had evidence Johnson's computer was hacked. The Government counters that Giannone "did not argue that any particular piece of evidence against him was altered as a result of the hack." Resp. Br. at 24. Though the Government contends that any hack was limited to third-party email accounts, the hacker actually installed a keylogger on Johnson's computer and accessed and posted personal information. J.A. 406–07. Because the Government relied so heavily on the evidence in

9

the chat logs at trial, evidence that the computer was compromised could constitute important impeachment evidence at trial.

However, the Government put forth evidence that Secret Service agents were transcribing Johnson and Giannone's interactions contemporaneously by tracking their keystrokes and recording Johnson's computer screen. Additionally, it is not clear *when* the hack took place, since the Government contends it took place two months after the transactions in this case. J.A. 471. At best, this evidence could be favorable impeachment evidence, because it casts doubt on the reliability of the chat transcripts.

Third, Giannone argues that the Government had evidence that other individuals were using Giannone's credit card and driver's license to rent cars. He argues that this is material because, at trial, the Government tied travel descriptions in chats to Giannone based on rental car records. Yet, the Government possessed evidence demonstrating that other individuals may have used Giannone's card to rent vehicles. The evidence shows two transactions under Giannone's VISA number with the redacted names of those reserving the cars. J.A. 396–97. Giannone argues that the redacted names indicate that someone else used his VISA card to rent those vehicles. But, as the Government pointed out, Giannone had access to his VISA records before these FOIA productions, so he should have already been aware of other individuals using his card.

Moreover, the Government put forth other substantial evidence that Giannone spent time in the locales discussed over chat on the relevant dates. For example, CIA INTEL said that he was going to fly to Hawaii and stay in the Hyatt. The Government introduced a travel statement in Giannone's name with a flight booking from New York to Hawaii, a

10

car rental statement in Giannone's name, and an American Express statement in his name with a payment to the Hyatt in Hawaii. The Government also did not rely on the redacted records at trial; they only relied on transactions in Giannone's name with other corroborating information. Thus, this evidence is also impeachment evidence at best, only because it indicates that other individuals may have had access to Giannone's account.

Finally, Giannone argues that he saw a chat log between Johnson and another individual discussing Giannone's account information. J.A. 446–47. Giannone claims that this indicates that another person had access to Giannone's bank account. The parties stipulated at trial that Giannone was the "true owner" of the bank account and had made withdrawals from that bank account. J.A. 469.

As the district court noted, Giannone likely would have had access to the information demonstrating that another person was making withdrawals from his account. Giannone contends that even if he had his bank records, he did not have chat logs essentially confirming that another individual was making withdrawals from his account. Opening Br. 27–28; Reply Br. 12–13. But Giannone already possessed some version of this information and could have argued at trial that another individual had access to his bank account and used it to make withdrawals. This, too, appears to be favorable impeachment evidence.

Considering this evidence cumulatively, the district court erroneously determined that the impeachment evidence Giannone points to was not favorable. The evidence Giannone has identified calls into question whether the Government's case was airtight as it claimed at trial. That evidence indicates that other people used Giannone's bank account and card information, and that the Government may have been able to identify the

11

whereabouts of the individuals messaging Giannone.  Additionally, whether the computer was hacked at least demonstrates that the computer *could* have been tampered with, though it is again not clear whether the hack occurred while Giannone was under investigation.

But the evidence is not cumulatively material, given the evidence the Government put forth indicating that Giannone was the individual responsible for engaging in the relevant activities.  We have determined that the cumulative materiality of suppressed evidence constituted a *Brady* violation where the case was "thin or circumstantial," or where the suppressed evidence, "[v]iewed cumulatively . . . completely undermines the crux of the [Government]'s closing argument . . . ." *Long v. Hooks*, 972 F.3d 442, 464 (4th Cir. 2020) (en banc), as amended (Aug. 26, 2020).  The evidence Giannone points to does not "put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435; *see Juniper*, 74 F.4th at 231 (holding that witness testimony that did not "directly undermine the varied evidence" against a defendant did not amount to *Brady* violation).  It buttresses Giannone's argument below, that another individual was Pit Boss 2600.  But as the Government noted at trial, even if someone had used Giannone's credit card once, it is unlikely that an imposter was responsible for every charge paid in Giannone's name.  J.A. 361.

In sum, Giannone has not met his burden to demonstrate he is entitled to coram nobis relief.  We therefore affirm the judgment of the district court.

*AFFIRMED*

12